FILED
 2009 Jul-23  PM 01:58
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**CHRISTY R. POWERS,**       ]
                             ]
    Plaintiff,           ]
                             ]
  vs.                      ]      CV 09-J-0085-NE
                             ]
**MICHAEL J. ASTRUE,**       ]
**Commissioner of the Social**  ]
**Security Administration**, ]
                             ]
    Defendant.

### MEMORANDUM OPINION

The plaintiff appeals from the decision of the Commissioner of Social Security denying her supplemental security income.  The case is now properly before the court.  See 42 U.S.C. § 405(g).

At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 29 years old and had completed the ninth grade (R. 52, 106).  The plaintiff alleges an inability to work due to spina bifida which causes extreme pain, a lack of concentration, depression, anxiety, back problems, and pain and buckling in her legs (R. 53, 63).  She also has pain from her coccyx, which is not in proper alignment, causing pain to shoot up her spine when she sits (R. 55).  The plaintiff is unable to climb stairs (R. 55), uses a cane most of the time (R. 55), has pain radiating from her neck to her feet (R. 56), has trouble lifting (R. 56), and is unable to drive because her legs are too weak to push the peddles (R. 57).  She asserts that her pain remains at a six or seven out of ten all the time, which causes her to be depressed and cry a lot (R. 59).  She has to alternate sitting and standing (R. 61), as well as elevate her feet about three times a day  (R. 62).  She lies in the fetal

position to ease her pain (R. 62).  The plaintiff estimates she can stand no more than 5 to ten minutes, then has to sit, and that she can sit for about thirty minutes before she must lie down (R. 62).  She is unable to bend, lift, or carry (R. 62). The plaintiff does no housework (R. 58, 64).  She is unable to care for her children because of her medical conditions (R. 54).  She stated her condition is worsening over time (R. 64, 128).

The ALJ found that the plaintiff's impairments which are severe are a history of possible spina bifida, a history of fracture to the distal second metatarsal, a history of adjustment disorder with anxiety, and sprains and strains (R. 28).  The ALJ found that none of these impairments constituted an impairment or combination of impairments listed in, or medically equal to, one of those listed in Appendix 1 of Subpart P, 20 CFR Part 404  (R. 29).  The ALJ then states

> although the plaintiff carries a diagnosis of spina bifida, the record contains no clinical or other objective medical evidence or record supporting this diagnosis.[1]  However, the undersigned is giving the claimant the benefit of the doubt in finding that spina bifida is a medically determinable impairment, but the undersigned finds that it is not a "severe" impairment as defined by the Regulations.
>
> A treating physician, Edwin K. Matthews, M.D. ....provided records from 2006 to 2007.... Office notes show a diagnosis of spina bifida and treatment for low back pain and insomnia.
>
> In February 2007, the claimant presented to the emergency room ... with complaints of back pain radiating down her right leg.... The emergency room physician found chronic back pain and stated the claimant had been

---

[1] According to the plaintiff, she was originally diagnosed with spina bifida by Dr. Donald Beach (R. 56). The plaintiff informed the ALJ that the MRI which confirmed this diagnosis was performed at Decatur General (R. 57).  Nothing in the record reflects whether any attempt was made to obtain this test result directly from Decatur General.  Dr. Beach responded to a request for records that he had none because he had not seen the plaintiff in more than ten years (R. 139).  However, there is a medical record reflecting that Dr. Beach hospitalized the plaintiff in 1997 for chronic back pain, including a limited range of motion (R. 297).  That record also reflects a diagnosis of panic disorder/depressive disorder (R. 297).

>    diagnosed with spina bifida occulta. She recommended orthopedic follow-up
>    ...

(R. 28).

The ALJ found that the plaintiff had the residual functional capacity to perform light work with additional limitations of requiring a sit/stand option, with occasional balancing, stooping, kneeling and crouching, occasional climbing ramps and stairs, no ladders, ropes, or scaffolds; but could frequently use her lower extremities to operate foot controls (R. 29). No limitations on weight which could be lifted or carried was included by the ALJ. Given these limitations, the ALJ found that the plaintiff could return to her past relevant work as a glove inspector[2] (R. 32). The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 34).

The plaintiff argues that the Commissioner erred by failing to find a mental residual functioning capacity (RFC), by finding a physical RFC without medical input, and by rejecting the treating source opinion. Plaintiff memorandum at 4, 7. This court agrees. Plaintiff's treating and emergency room physicians each noted that the plaintiff suffered from spina bifida and chronic pain as a result thereof. The ALJ recognized this, listing the plaintiff's "history of possible spina bifida" as a severe impairment, based on the plaintiff's medical records, but immediately thereafter found it not to be a severe impairment (R. 28).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining:  1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner,

---

[2] The court notes that the plaintiff performed the work of a glove inspector for approximately 60 days more than ten years ago (R.108-109).

and 2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).  However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

The court finds that the decision of the ALJ is not supported by substantial evidence.  The record reflects that the plaintiff's treating physician wrote that, due to spina bifida and anxiety, she suffers from chronic pain and anxiety, and that she is unable to maintain employment (R. 13, 298).  Her medical records show diagnoses of chronic lower back pain and anxiety/depression (R. 14-16, 40, 143, 145, 169, 237, 242, 273, 276-277, 288-292).  Some of the medical records further note her to have a slow and/or limping gait (R. 145).  Plaintiff's treating physician has also completed a food stamp application for the plaintiff stating that she is unable to work because of chronic lower back pain (R. 293, 298).

The ALJ rejected all of these medical opinions, in favor of the opinion of consultative physician Robert A. Sparks, III, M.D. (R. 28).  The ALJ then applied the pain standard, and found that the plaintiff's medical evidence did not support the plaintiff's allegations of severe and chronic pain because those allegations were inconsistent with the opinion of Dr. Sparks (R. 31).  The ALJ further rejected the opinion of Dr. Matthews, the plaintiff's treating physician, because it conflicted with the opinion of Dr. Sparks (R. 32).

Thus, having ignored all portions of the record which did not fit in with the opinion of Dr. Sparks, the ALJ concluded that the plaintiff could perform light work, based on the testimony of the Vocational Expert (R. 32). In spite of the plaintiff's testimony and medical records, the ALJ placed no limitations on lifting and/or carrying in his hypotheticals to the VE, other than that the plaintiff could perform work at the light level.[3] Because light work involves lifting no more than twenty pounds at a time, and no evidence reflects the plaintiff can lift this much weight, the question to the VE was incomplete. The court finds that the hypothetical posed to the VE did not include "all of the claimant's impairments" as required. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002). Therefore, the ALJ's finding, based on the VE's testimony, that there were jobs the plaintiff could perform, is not supported by substantial evidence because the hypothetical was incomplete. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999), cert. denied, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000) ("the VE's task, therefore, is to determine whether there are jobs in the region which the claimant can perform with her precise disabilities or limitations").

Although the ALJ applied the 11th Circuit three-part pain standard, his application of this standard was based on the foregone conclusion that the plaintiff was not disabled. In assessing pain allegations, this court must consider 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the level of severity of the alleged pain arising from that condition or 3) that the objectively determinable medical condition is of a severity which can reasonably be expected to give

---

[3] The ALJ also ignored plaintiff's testimony that she must lie down during the day (R. 62). This testimony is supported by records from the plaintiff's incarceration, which reflect that the plaintiff was taken off work release because she could not perform the work (R. 144-147) and that she was supposed to be accommodated with a bottom bunk and be allowed to lie down as desired during the day (R. 153). The court notes that the plaintiff was assisted with her application for SSI by a prison official (R. 88).

rise to the alleged pain. *See e.g Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). While the ALJ properly cited this standard, he failed to apply it. The ALJ found that the plaintiff did have an underlying medical condition,[4] but found it did not support her allegations of severe and chronic pain, because such allegations were inconsistent with the opinion of Dr. Sparks (R. 31). Dr. Sparks' opinions regarding the plaintiff's ability to engage in various work related activities are not evidence of the severity of the plaintiff's medical condition.

The court finds that the proper consideration is whether objective medical evidence confirms the level of the alleged pain from the particular condition under consideration. Unfortunately, here the plaintiff has provided little in the way of objective medical evidence because she lacks the funds to have testing performed. The plaintiff testified that Dr. Matthews told her if and when she gets insurance, there are tests he wants to do (R. 65-66). Thus the plaintiff lacks "objective medical evidence" which details medical conditions of such severity that they can be "reasonably expected to give rise to the alleged pain," *see Holt*, 921 F.2d at 1223, because she lacks the funds to obtain them. Given that, the ALJ should not have discounted the treating physicians' opinions due to a lack of objective evidence.[5] *See Cronon v. Barnhart*, 244 F.Supp.2d 1286, 1292 n. 16 (N.D.Ala.2003)

---

[4]The ALJ failed to specify any particular condition (R. 31).

[5]When a claimant's symptoms suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529 describes the kinds of evidence the ALJ must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements. This includes (1) The claimant's daily activities; (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p). Here, the ALJ failed to consider any such factors.

(holding that chastising a plaintiff for failing to obtain testing plaintiff could not afford was improper).

The plaintiff next asserts that the ALJ failed to give proper weight to the plaintiff's treating physician. No support for the opinions of Dr. Sparks appears in any other medical record contained in the plaintiff's file. The ALJ offered no reasons for ignoring the opinions of Dr. Matthews, other than the fact that Dr. Sparks disagreed (R. 32). The fact that the treating physician's opinion conflicts with that of the consultative physician's opinion is not the "good cause" required to ignore a treating physician. *See e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir.2003).

By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of the medical reports in the file. "As the hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir.1992). An ALJ is simply not allowed to make medical findings. *Freeman v. Schneider*, 681 F.2d 727, 731 (11th Cir. 1982).

Based on the lack of substantial evidence in support of the ALJ's conclusion, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency to further develop the record, including holding a supplemental hearing at which a hypothetical containing plaintiff's medically determined impairments, including chronic low back pain and anxiety, is posed to a VE. If necessary to resolve a perceived conflict in the evidence, an additional consultative evaluation, with any testing

which could enlighten the Commissioner to the plaintiff's medical condition, should be obtained.

Done, this 23rd of July, 2009.

                                                INGE PRYTZ JOHNSON
                                                U.S. DISTRICT JUDGE